## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL CASE NO. 5:21-cv-00084-MR

| | | |
|---|---|---|
| JAMAL BULLOCK EL-BEY,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendants North Carolina Department of Public Safety (NCDPS), Daniel Turner, and Russell Chester's Motion for Summary Judgment [Doc. 30].

## I. BACKGROUND

The incarcerated Plaintiff Jamal Bullock El-Bey, proceeding pro se, filed this action in Alexander County Superior Court addressing incidents that allegedly occurred at the Alexander Correctional Institution.[2] The

_____

[1] According to the North Carolina Department of Public Safety's website, the Plaintiff's name is Jamal Bullock. See https://webapps.doc.state.nc.us/opi/viewoffender.do?metho o=view&offenderID=0708943&searchOffenderId=0708943&searchDOBRange=0&listurl =pagelistoffendersearchresults&listpage=1 (last accessed Dec. 1, 2022).

[2] The Plaintiff filed the Complaint while he was incarcerated at the Marion Correctional Institution. He is presently housed at the Sampson Correctional Institution.

Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1331, and the Plaintiff's Motion to Remand was denied. [Docs. 1, 3, 6]. The Plaintiff's verified Complaint [Doc. 1-2] passed initial review on claims against Defendants Daniel Turner, an Alexander CI facility intelligence officer (FIO), and Russell Chester, an Alexander CI FIO/ Security Risk Group (SRG)[3] captain, for: denying him due process by depriving him of property and validating him as an SRG member; and retaliation. [Doc. 9 at 5-6, 8-9]. The Court exercised supplemental jurisdiction over the Plaintiff's claims for violations of North Carolina Constitution Article I, Sections 14 and 19, and for defamation under North Carolina law. [Id. at 11-13]. The Plaintiff seeks injunctive relief, compensatory and punitive damages, a declaratory judgment, and any other relief the Court deems just and proper. [Doc. 1-2 at 7].

Defendants NCDPS, Chester and Turner filed the instant Motion for Summary Judgment. [Doc. 30: MSJ; see Doc. 31: MSJ Memo.]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which

---

[3] The acronyms "SRG" and "STG" (Security Threat Group) are used interchangeably in the Complaint and other documents filed in this action.

2

evidence could be submitted to the Court. [Doc. 35; Roseboro Order]. The Plaintiff filed a Response and supporting materials [Doc. 37 at 1-2 (Unverified Resp.); id. at 3-17 (Verified Resp. Memo.); id. at 18-61 (Resp. Exhibits)],[4] and the Defendants have filed a Notice of Intent Not to Reply [Doc. 38: Notice]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

_____

[4] The portions of the MSJ Response and supporting materials that refer to claims that did not survive initial review, or which are now raised for the first time, are not properly before the Court and do not warrant further discussion. [See, e.g., Doc. 37: Resp. Memo. at 4, 6-10, 12 (alluding to the right to access the courts, policy violations, new due process claims, the Plaintiff's religious beliefs, and additional provisions of the North Carolina Constitution)].

3

issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  <u>Id.</u> at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  <u>See id.</u>; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  <u>Anderson</u>, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a

4

'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

The Plaintiff was identified as an "STG Associate" at a prison in 2017, based on a phone conversation that the Plaintiff had with another offender

regarding possible rankings within a set of the Crip gang.[5]  [Doc. 31-3: Turner Decl. at ¶ 9].

The Plaintiff was transferred to Alexander CI around March 14, 2018, and his property was searched upon entering the prison.  [Doc. 1-2: Complaint at 2].  As an STG Associate, the Plaintiff "was being monitored for any and all STG and security concerns."  [Doc. 31-3: Turner Decl. at ¶ 9; see Doc. 32 (Sealed Security Manual)].  Around March 19, 2018, the Plaintiff wrote to Alexander CI's "SRG/FIO department" asking to speak to them about having his "bogus" SRG associate label removed.  [Id.].  The Plaintiff wrote to Captain Chester on March 21, 2018, asking to read the STG/SRG policy and procedure, which the Plaintiff had never been allowed to see at any facility.  [Id.].  In late March,[6] the Plaintiff was making photocopies for a pending tort case when the tort claim coordinator, Angela Marshal,[7] asked Plaintiff "whether [he is] a sovereign citizen or something," and she called FIO/SRG correctional officer Dula.[8]  [Id. at 3].  On April 2, 2018, the Plaintiff

---

[5] The Plaintiff denies that this was the conversation's content.  [Doc. 37: MSJ Response at 6].

[6] "March 2? 2018" in the Complaint.  [Doc. 1-2 at 3].

[7] Ms. Marshall is not a defendant in this case.

[8] Officer Dula is not a defendant in this case.

6

wrote a grievance against the "full administration" at Alexander CI for refusing to allow him to read the SRG/STG policy. [Doc. 1-2: Complaint at 3-4; Doc. 37: Resp. Memo. at 6-7, 11-12]. The grievance was accepted and processed on the morning of April 6, 2018. [Doc. 1-2: Complaint at 3-4].

Less than two hours after the grievance was processed, Captain Chester and Officer Turner had the Plaintiff's cell searched for the first time since his arrival at Alexander CI. [Doc. 1-2: Complaint at 4-5; Doc. 37: Resp. Memo. at 6-7]. The Plaintiff immediately phoned his family and his "Moorish-American contact,"[9] informing them what had happened. [Doc. 1-2: Complaint at 4]. After the search, Captain Chester informed the Plaintiff that Chester had been listening to Plaintiff's phone calls, and that "a lot" of his property would not be returned because it was SRG Sovereign Citizen material. [Doc. 1-2: Complaint at 4]. The Plaintiff was given a property inventory form for two notebooks and three sheets of paper that had been confiscated. [Doc. 1-2: Complaint at 4; see Doc. 31-5: MSJ Ex at 1 (DC-160 property inventory form)]. The inventory form was signed by Turner and Chester, and the "inmate signature" section is marked "refused to sign." [Doc. 31-5: MSJ Ex at 1]. The confiscated items include: a handwritten list

---

[9] The Plaintiff claims to be a longstanding member of the Moorish Science Temple of America. [See Doc. 1-2: Complaint at 5].

of "Court Room Proceeding – Dos & Don'ts" [Doc. 31-5: MSJ Ex at 2-4]; a "World Service Authority" birth certificate in the name of Prince Tunchie BleekAli El-Bey [id. at 5]; and a "World Service Authority Central Registry" photo identification in that same name [id. at 6].

Captain Chester moved the Plaintiff to the "gang" housing pod, and on April 12, 2018, the Plaintiff was served with an A-14 gang-related infraction for the confiscated property. [Doc. 1-2: Complaint at 4]. The infraction was later dismissed, but the Plaintiff's property was not returned to him nor was he allowed to have it sent home. [Doc. 37: Resp. Memo. at 4]. Further, the Plaintiff is still labeled as a Sovereign Citizen SRG, which carries restrictions including: no contact visits; a limit of two phone calls per month; and everyone but immediate family members having been permanently removed from his visitation list.[10] [Doc. 1-2: Complaint at 6; Doc. 37: Resp. Memo. at 4, 9-12].

According to the Plaintiff, Captain Chester and Officer Turner "only" had his cell searched on April 6 because he filed the April 2 grievance, and the search was conducted "in an attempt to locate some form of gang related material in association with the Crip organization because the Plaintiff

---

[10] Only people on the approved visitation list can send an inmate money. [Doc. 37: Resp. Memo. at 11; Doc. 37: Resp. Ex at 26].

requested to be removed from the watch/associates list of Crip….″  [Doc. 37: Resp. Ex at 59 (Plaintiff's Decl.); Doc. 1-2: Complaint at 4-5; Doc. 37: Resp. Memo. at 6-7].  The Plaintiff denies that any of the property was Sovereign Citizens material, and he asserts that the Chester and Turner "vindictively" decided to "turn" his Moorish American documents into SRG Sovereign Citizen material in retaliation for his request to be removed from the Crip watch/associate list.  [Doc. 1-2: Complaint at 4-5; Doc. 37: Resp. Memo. at 6, 7, 10 (describing the notebook's contents as "legal material … and intellectual private property (copyright) pending"].   The Plaintiff further asserts that Captain Chester and Officer Turner "erroneously" and "unjustly" validated him as an SRG "Sovereign Citizen level 1" on April 16, 2018, without due process, and without any evidence.  [Doc. 1-2: Complaint at 4; Doc. 37: Resp. Memo. at 11].  The Plaintiff submitted declarations from several other inmates who claim that they, too, have never seen the SRG/STG policy, and one of whom states that he was switched to another SRG group instead of being cleared.  [Doc. 37: Resp. Ex at 60 (Decl. of Antwon L. Bryan); Doc. 37: Resp. Ex at 61 (Decl. of Rufino Santamaria)].

According to the Defendants, the Plaintiff's cell was searched on April 6 "due to the STG monitoring process."  [Doc. 31-3: Turner Decl. at ¶ 10; Doc. 31-4: Chester Decl. at ¶ 10; see Doc. 32 (Sealed Security Manual)].

The Plaintiff was found to be in possession of "multiple documents and identifications directly related to the STG group Sovereign Citizens." Doc. 31-3: Turner Decl. at ¶ 10]. The materials were confiscated pursuant to NCDPS policy, and they were documented on a property inventory form. [Doc. 31-3: Turner Decl. at ¶ 10; see Doc. 31-4: MSJ Ex at 31]. On April 10, 2018, Officer Turner met with the Plaintiff to discuss his alleged involvement with the Sovereign Citizens, and the Plaintiff denied being a member. [Doc. 31-3: Turner Decl. at ¶ 11]. The Defendants have filed a Security Risk Group Program Questionnaire and an Acknowledgement of Security Risk Group Affiliation, which explained that the Plaintiff was being referred for validation. [Doc. 31-3: Turner Decl. at ¶ 11; see Doc. 33: SRG Questionnaire; Doc. 31-7: MSJ Ex at 1 (Acknowledgement of SRG Affiliation)].[11] The SRG Questionnaire and Acknowledgement were signed by Officer Turner and witnessed by Captain Chester, and the lines for the offender/member's signature are marked "[r]efused to sign."[12] [See Doc. 33: SRG

---

[11] The Defendants moved to seal the SRG Questionnaire, but later withdrew that Motion. [See Doc. 34: Motion to Seal; Doc. 36: Notice of Withdrawal].

[12] The Plaintiff appears to deny that the meeting with Officer Turner ever occurred, stating that he "has yet to meet with anyone about this STG/SRG designation." [Doc. 37: Resp. Memo. at 7]. He also denies ever having seen the SRG Questionnaire or Acknowledgement form. [Id.].

Questionnaire; Doc. 31-7: MSJ Ex at 1 (Acknowledgement of SRG Affiliation)].

Officer Turner recommended that the Plaintiff be validated as a member of the Sovereign Citizens SRG as a result of the confiscated property. [See Doc. 31-3: Turner Decl. at ¶ 12; Doc. 31-4: Chester Decl. at ¶ 12]. That recommendation was approved at the facility level on April 11, 2018, and by NCDPS's Special Operations and Intelligence Unit on April 16, 2018. [Id.]. The Defendants deny violating the Plaintiff's rights at any time, and they assert that they performed their jobs pursuant to NCDPS and Alexander CI policies and procedures. [Doc. 31-3: Turner Decl. at ¶ 13; Doc. 31-4: Chester Decl. at ¶ 13].

## IV.   DISCUSSION

### A.   Due Process

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988).

First, the Plaintiff claims that Defendants Chester and Turner violated his due process interests by confiscating his property and by failing to return it to him or allow him to mail it home pursuant to policy, after the related A-14 disciplinary charge was dismissed. [Doc. 1-2: Complaint at 4].

At the heart of the Plaintiff's due process claims is whether the confiscated items were "legal/religious" property over which the Plaintiff had a due process interest, or Sovereign Citizen contraband to which due process rights do not attach. Sovereign Citizens is a loosely-affiliated group that believes that state and federal governments are illegitimate and therefore have no authority to regulate their behavior. See United States v. Ulloa, 511 F. App'x 105, 106 n.1 (2d Cir. 2013); Waters v. Madson, 921 F.3d 725, 732 n.4 (8th Cir. 2019). Adherents to the theory believe that they are "natural humans" (or sovereigns), and that they are "not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011). A Sovereign Citizen may, for instance: rely on the U.C.C.; claim that the use of his name constitutes copyright/trademark infringement; claim that the U.S. Government is bankrupt and operates on a credit system that uses U.S. citizens as collateral; assert that he is proceeding in trust; assert that his

status as sovereign citizens differs from fictional individuals identified by a birth certificate or social security number; or preface his name with "All Rights Reserved."  See, e.g., Wood v. United States, 161 Fed. Cl. 30, 34 (2022); El v. AmeriCredit Fin. Servs., Inc., 710 F.3d 748, 750 (7th Cir. 2013); Lebron v. BMW Fin. Servs., No. 6:21-cv-958, 2021 WL 9594003 (M.D. Fla. Dec. 13, 2021); Presley v. Prodan, No. 3:12-3511, 2013 WL 1342465 (D.S.C. Mar. 10, 2013) (collecting cases), report adopted, 2013 WL 1342539 (D.S.C. April 2, 2013).  Sovereign Citizens are "widely recognized as a security threat group because the group attempts to undermine governmental authority."[13] Love v. N.C. Dep't of Pub. Safety, No. 5:19-cv-75, 2020 WL 6050583 at *3 (W.D.N.C. Oct. 13, 2020), aff'd, 845 F. App'x 283 (4th Cir. 2021).

It is undisputed that the items confiscated from the Plaintiff's cell include references to "acceptance for value" and a "bond birth certificate" [Doc. 31-5: MSJ Ex at 2]; notes to question a judge about being "registered with the Secretary of State" [id.]; discussion of "Treasury Direct SS# account … makes a claim upon abandoned property/delinquent, deferred taxes," "source/principal creditor," and "delinquent deferred tax – contraband – kept

---

[13] The FBI has labeled the Sovereign Citizens as a domestic terrorist group. See https://archives.fbi.gov/archives/news/stories/2010/april/sovereigncitizens_041310/domestic-terrorism-the-sovereign-citizen-movement (last accessed Nov. 30, 2022); Fed. R. Evid. 201.

hidden from you" [id. at 3]; a purported agreement among lawyers "to never reveal who the true (creditor/party) is in the Bankruptcy process/proceeding…" [id. at 4]; email addresses for "sovereign" contacts [id.]; and "World Service Authority"[14] birth certificate and photo identification using an alias [id. at 5-6]. All of these items, on their face, fall within the scope of Sovereign Citizen/STG materials. The Plaintiff's contention that these documents are mere religious/legal property is conclusively refuted by this forecast of objective evidence. See Scott, 550 U.S. at 380. The Plaintiff's Compliant and several exhibits that the Plaintiff has filed in opposition to the Motion for Summary Judgment lend further support to this conclusion. [See, e.g., Doc. 1-2: Complaint at 5-6 (referring to the confiscated documents as "Nationality documents" bearing the Plaintiff's "proclaimed Moorish-American name…" and describing his "rightful nationality" as "Moorish-American;" and noting that he is registered in the public record as "a (Beneficiary, Executor, Grantor, Grantee, Trustee, etc) to

---

[14] The "World Service Authority" promotes "world citizenship" by issuing "world passports" to any person who wants to declare himself/herself "a citizen of the world;" they "are not recognized, in the United States and in the majority of world nations, as substitutes to official documents such as national passports or drivers' licenses." Minister Truth Ali ex rel. Williams v. New Jersey, No. 12-cv-2797, 2012 WL 4959488, at *3, n.3 (D.N.J. Oct. 17, 2012; see Stewart v. Holder, No. 1:16-cv-682, 2017 WL 4479612, at *8 (E.D. Va. July 19, 2017) (finding that a deputy validly arrested an individual for possession of a false identification card from the "World Service Authority"), aff'd, 710 F. App'x 120 (4th Cir. 2018);

the JAMAL BULLOCK Estate Trust"); see also Doc. 37: Resp. Ex at 27 (IRS employer identification form for "Jamal Bullock Tr; Prince Tunchie Bleek Ali Elbey TTEE);" id. at 47 (Register of Deeds receipt for the Plaintiff's "declared name" of "Jamal BullockEl-Bey," signed "All Rights Reserved U.C.C. 1-207 and 1-308")].  The Plaintiff lacks any property interest in this contraband and, accordingly, he has no due process claim regarding its confiscation or retention.[15]  See generally Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (holding that a prisoner had no property interest in contraband, and therefore, its destruction did not implicate any due process concerns); Bagley v. Lanham, 23 F.3d 399 (4th Cir. 1994) ("Prison officials are authorized to summarily seize contraband.") (table).

Second, the Plaintiff claims that the Defendants validated him as a Sovereign Citizen SRG without due process, which resulted in restricted conditions of confinement.  [Doc. 1-2: Complaint at 5-6].[16]  The Plaintiff has

---

[15] To the extent that the Plaintiff claims that the Defendants' actions violated prison policy, he has a remedy for conversion under North Carolina law.  See generally Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); Gallimore v. Sink, 27 N.C. App. 65, 67, 218 S.E.2d 181, 182 (1975).

[16] The Plaintiff has raised a number of new due process claims in his summary judgment Response, i.e., that the Defendants violated due process by charging him with an A-14 infraction without having provided him with Security Manual information about "STG/SRG members and the do's and don'ts" [Doc. 37: Resp. Memo. at 12], that he was improperly validated based on Sovereign Citizen involvement whereas he was previously listed as a Crip associate [id. at 6], and that the hardships from his STG label will increase upon his release from incarceration [id. at 12].  These claims are not properly before the Court and

15

forecast evidence that, as an SRG: he is not allowed contact visits [id. at 6]; he is limited to two phone calls per month [id.]; and his friends and "significant others" have been permanently removed from his visitation list and consequently cannot visit him or send him money [id.; Doc. 37: Resp. Memo at 11].

A prisoner's liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise

---

will not be discussed separately. See note 3, *supra*.

violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Here, the restricted privileges that the Plaintiff has forecast fall short of demonstrating the existence of any atypical or significant hardship. See Gaston, 946 F.2d at 343. Thus, the Plaintiff does not have a protected interest in his security validation, and no due process claim can proceed.

The Defendants' Motion for Summary Judgment on the Plaintiff's due process claims is, therefore, granted.

## B. Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978).

In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir.

2020) (citing <u>Martin v. Duffy</u>, 858 F.3d 239, 249 (4th Cir. 2017); quoting <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 499 (4th Cir. 2005)).  The same-decision test applies to determining the causation element of a prisoner's retaliation claim.  <u>Id.</u>  Once the prisoner-plaintiff shows that his "protected conduct was a substantial motivating factor in a prison guard's decision to take adverse action," the burden then shifts to the defendant to prove a permissible basis for taking that action.  <u>Id.</u> at 300.  Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  <u>Id.</u>

Here, the Plaintiff claims that Defendants Chester and Turner ordered the April 6, 2018 cell search in retaliation for his request to be removed from the SRG associate list and/or for filing a grievance in which he asked to see the SRG/STG policy and procedure.  [Doc. 1-2: Complaint at 2, 4].  The Plaintiff alleges that the Defendants acted with retaliatory and vindictive intent [Doc. 37: Resp. Memo. at 9-10, 14; <u>id.</u> at 59 (Plaintiff's Decl.)], as evidenced by the timing of the search, <u>i.e.</u>, 23 days after he entered Alexander CI, within weeks of his letters requesting removal from the

associate list, and within hours after his April 2 grievance requesting the SRG/STG policy & procedure was processed. [Doc. 1-2: Complaint at 4].

Notwithstanding the Plaintiff's bare assertions, however, the evidence is unrefuted that the Plaintiff's property was searched because he was being monitored as an STG Associate. [Doc. 31-3: Turner Decl. at ¶¶ 9-10; Doc. 32 (Sealed Security Manual)]. This means that the Plaintiff was being monitored for any and all SRG/STG activity and security concerns. There is no forecast that supports the proposition that the search in question had anything to do with the Plaintiff's request to be removed from the STG Associate list, his filing of any grievance, or some other protected exercise of his First Amendment rights. Accordingly, the Defendants' Motion for Summary Judgment is granted on the Plaintiff's retaliation claims.

## C. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, The Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v.

*Maine*, 527 U.S. 706, 712-13 (1999); <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996). Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. <u>See</u> <u>generally</u> <u>Mary's House, Inc. v. North Carolina</u>, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, the Defendants are entitled to summary judgment to the extent that the Plaintiff sought to claim § 1983 damages against them in their official capacities.

### D. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." <u>E.W. ex rel. T.W. v. Dolgos</u>, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation

20

marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated any constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. Therefore, the Court grants summary judgment for the Defendants on this basis as well.[17]

### E. North Carolina Claims

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's claims for violations of Article 1, Sections 14 and 19 of the North Carolina constitution, and for defamation. [Doc. 9: Order on Initial Review at 11-13]. Because the Plaintiff's claims under the North Carolina Constitution are synonymous with his § 1983 due process and retaliation claims, they share the same fate and will be dismissed. See Sections A-B, *supra*. Further, the forecast of evidence conclusively demonstrates that the SRG label was not false and, accordingly, the Plaintiff's defamation claim likewise

---

[17] Because no § 1983 claim has survived summary judgment, the Court will not separately address the Defendants' argument that the Plaintiff is not entitled to punitive damages. [See 31: MSJ Memo. at 13].

fails.  Id.; Donovan v. Fiumara, 114 N.C.App. 524, 526, 442 S.E.2d 572, 574 (1994) (for a statement to be defamatory, it must be false).  Accordingly, summary judgment is granted for the Defendants on the Plaintiff's claims for violations of the North Carolina Constitution and for defamation.

## IV.    CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment and this action will be dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: January 27, 2023

Martin Reidinger
Chief United States District Judge